ELLEN F. LYNCH *vs.* WARREN J. RICHARDSON.

Middlesex. January 22, 1895. — February 28, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Duty and Liability of Keeper of Livery Stable in furnishing Horse — Inference of Knowledge of Viciousness of Horse.*

It is the duty of the keeper of a livery stable to furnish to a hirer a horse which does not have a vicious habit of running and kicking, and if he knows of the existence of such habit in a horse, or if, by the exercise of reasonable care to ascertain whether the horse was suitable for the use of hirers, he ought to have known that it was dangerous, he is liable for such injuries as result from his wrongful conduct.

If the keeper of a livery stable lets to a hirer a horse somewhat advanced in years, which he has owned for more than a year, and which has long had a habit frequently manifested of viciously kicking and trying to run away when started for home after having been out for a considerable time, and this viciousness has been known before the owner bought it to persons who never owned the horse, in an action against the owner for injuries occasioned by the viciousness of the horse to the hirer, who was free from fault and in the exercise of due care, the jury will be warranted in inferring knowledge on the part of the defendant of such viciousness.

TORT, for personal injuries occasioned to the plaintiff by the alleged viciousness of a horse let to one Michael H. Lynch, the husband of the plaintiff, by the defendant, who was a livery stable keeper in Waltham. Trial in the Superior Court, before *Mason*, C. J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show that, on November 1, 1891, Michael H. Lynch sent to the defendant by his sons, who were fourteen and sixteen years old respectively, a written order, " Please deliver to the bearer a horse and two-seated carriage or carryall and charge the same to my account "; that the defendant received and read the order, and then directed an employee to harness a horse, which was delivered to the two boys, who took the horse to the plaintiff's house; that the plaintiff, with her two sisters, a daughter, and the younger of the

two boys, left her home in Waltham and went to Newton Upper
Falls; that, on leaving the latter place, the horse was very rest-
less, and after going a short distance commenced to run and
kick, and continued so to do for a quarter of a mile; that the
boy examined the harness, carriage, and horse, and saw that
there existed no cause for the horse's viciousness; and that they
continued on their way home, and for a mile and a half the
horse went all right, until, reaching a point at the top of a hill
which was nearly a quarter of a mile in length, the horse began
to kick and run, and, descending the hill, crossed a railroad
track, when the reins broke, and the horse, in turning on a
certain street, overturned the carriage, and the plaintiff was
thrown out and received the injuries complained of.

One Callaghan, who was called as a witness for the plaintiff,
testified that he had known the horse about three or four years;
that it was owned by one Carney of Waltham, and by him sold
to one McAuliffe, and by McAuliffe sold to the defendant; that
he knew the horse while owned by Carney about a year and a
half; that McAuliffe owned it about six months, to the best of
his knowledge and belief, before he sold it to the defendant;
that during the year and a half that he knew it while Carney
owned it, and just prior to his selling it to McAuliffe, he had
seen the horse several times; that he had seen it driven and
knew it to be a vicious horse; that if it was away from the
stable at meal hours it would try to run and kick; and that he
saw it at one time when it had tried to kick and run with
Carney's son.

Carney testified that he and his son owned the horse together
as copartners in the wood and coal business; that the horse
had been used to drive and work in their business; that he did
not know the age of the horse, and did not know how old it
was when he bought it; that it was a horse of an uncertain
age; that it was a vicious and ugly animal; that it had tried
to run away with him twice, the only occasions on which
he drove it; that when starting to run and kick it would
drop its ears back, and this was its habit when it had been
driven some distance from home and was starting towards
home, especially after meal times; that it was always ugly
to strangers, and would not allow a stranger to come into its

stall without trying to kick him, and would press a person against the stall in a vicious manner; and that, when he and his son dissolved copartnership, they sold this horse to McAuliffe, who owned it about six months, and then sold it to the defendant.

Thomas J. Lynch, who was driving the horse at the time of the accident, testified that when leaving Newton Upper Falls the horse commenced to run and kick, and continued running and kicking for about half a mile; that it laid back its ears and acted as though it was accustomed to run away; that it then drove kindly and safely for a mile and a half, until they arrived at the top of a hill; that it then started to run away, and continued kicking and running down the hill; and that he used every effort to stop it until the reins broke, which was the last that he remembered.

The plaintiff testified that he heard the defendant say, immediately after the accident, that if he had known the boy was going to drive this horse he would not have let him have it. There was evidence tending to show that the boy who drove the horse on that occasion had been accustomed to driving and handling horses for several years.

The defendant requested the judge to rule that, upon the evidence, no cause of action appeared; and that there was no evidence that the defendant knew that the horse was vicious.

The judge so ruled, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*G. L. Mayberry*, for the plaintiff.

*B. B. Johnson*, for the defendant.

KNOWLTON, J. The defendant was a keeper of a livery stable, and the plaintiff's husband hired of him a horse and carriage for use by the plaintiff and other members of his family. The horse furnished under the contract was advanced in years, and there was evidence from which the jury might have found that it had long had a habit of viciously kicking and trying to run away when started for home, after having been kept out for a considerable time. There was also evidence tending to show that the plaintiff and her driver were free from fault, and in the exercise of due care. It was the duty of the defendant to furnish a horse that had no such vicious habit, and

if he knew of the existence of the habit, or if, by the exercise of reasonable care to ascertain whether the horse was suitable for the use of hirers, he ought to have known that it was dangerous, he is liable for such injuries as resulted from his wrongful conduct.  *Horne* v. *Meakin*, 115 Mass. 326.   *Copeland* v. *Draper*, 157 Mass. 558.

A verdict was ordered for the defendant solely on the ground that there was no evidence that he knew of the viciousness of the horse.   There was no direct evidence of such knowledge, but we think there was evidence from which the jury might well have inferred that he knew the facts.  · The evidence would have warranted the jury in believing that the habit was of such a kind as to be frequently manifested.   It was the duty of the defendant to try to inform himself in regard to the habits of horses kept in his stable for use in his business.   It does not require a very long acquaintance with a horse to enable an ordinary livery stable keeper to form a correct opinion of its qualities.   Usually he tries to ascertain as much as possible about it before becoming its owner.   In the present case the evidence indicates that different persons who never owned this horse knew of its viciousness before the defendant bought it.   It does not very definitely appear how long the defendant had it before the accident, but there is evidence tending to show that it was between one and two years.   Callaghan testified " that he had known the horse about three or four years ; that it was owned by one Carney of Waltham, and by him sold to one McAuliffe, and by McAuliffe sold to the defendant; that he knew the horse while owned by Carney about a year and a half ; and that McAuliffe owned it about six months, to the best of his knowledge and belief, before he sold it to the defendant."   This evidence well warranted a finding without direct testimony that the defendant knew whether or not the horse had a vicious habit of running and kicking.

*Exceptions sustained.*