JOSEPH GREELEY *vs.* ANDREW L. JAMESON & another.

Suffolk. December 6, 1928. — January 3, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Animal. Horse.*

At the trial of an action of tort against proprietors of a livery stable
for personal injuries sustained when the plaintiff was kicked by a horse
let by the defendants to his employer to be driven by the plaintiff, there
was evidence of two occasions when the horse had bitten; that he had
a nervous disposition and that, if left standing, he would start for the
defendant's stable; that on a single occasion he had kicked and dam-
aged the whiffletree of the vehicle he was drawing; that, when the
plaintiff was driving him, he had kicked the seat, and, when the plain-
tiff was fixing it, had kicked the plaintiff and broken the plaintiff's leg.
The judge in effect charged the jury that, to hold the defendants liable,
they must find that the horse had a vicious propensity to kick and
that the defendants knew or should have known of that propensity
when the horse was let to the plaintiff's employer, and, in supplemental
instructions following objections of the plaintiff to the limiting of a
vicious propensity of the horse, knowledge of which would make the
defendants liable, to a propensity to kick, stated: "The gist of this
action is the question of whether a person kept a vicious horse, which
he knew to be vicious or which he should have known to be vicious,
and that, in consequence of some vicious tendency or habit which the
person knew of, or should have known of, the plaintiff was injured.
The knowledge of the vicious habit must be the knowledge of some
habit the exercise of which results in the injury." *Held,* that

(1) It was proper to refuse to instruct the jury, in terms, "It was
the duty of the defendants to furnish the plaintiff's employers with a
horse suitable for the plaintiff to drive for the purpose for which it was
hired";

(2) It was proper to refuse to instruct the jury, in terms, "If the
defendants negligently furnished a horse for the plaintiff to drive
which was unsuitable, and the plaintiff's injury has been occasioned
thereby, it is not a defence that the defendants did not know that the
horse was unsuitable";

(3) It was proper to refuse to instruct the jury, in terms, "The
plaintiff's employers having hired of the defendants, who were public

stable keepers, a horse and team for the plaintiff to drive and go to and from the Boston market, the defendants were bound to furnish for the plaintiff to drive a horse and wagon reasonably safe for such a purpose; and if the horse was not reasonably safe for the plaintiff to drive and the plaintiff exercised due care on this occasion, then the plaintiff is entitled to recover";

(4) The instructions given to the jury were proper.

At the trial of the action above described, it was proper to admit in evidence a certain book of account kept by the defendants in the regular course of business which, among other things, showed that the horse had been rented almost every day for a period of several months before the accident, the evidence being relevant on the issue whether the defendants knew or should have known that the horse in question had a vicious disposition of which the defendants were under a duty to give warning not only to the person who hired him, but to any person who he knew or contemplated, or ought to have contemplated, would use him.

TORT against the proprietors of a livery stable, for personal injuries sustained by the plaintiff when kicked by the defendants' horse. Writ dated June 1, 1923.

In the Superior Court, the action was tried before *Cox*, J. Material evidence, requests by the plaintiff refused by the judge, and portions of the charge to the jury are stated in the opinion. That portion of the charge quoted in the opinion which appears on page 470, and begins with the words "The gist of the action," was in a supplemental charge and followed an objection by the plaintiff which his counsel stated as follows: "I want to take an exception to that part of your charge where your Honor said if this horse wasn't a kicker the plaintiff cannot recover. It seems to me you have left it with the jury this way, that unless this horse had kicked before this accident, and these defendants knew he had kicked, this plaintiff cannot recover. As I understand the law, it is not necessary he should have kicked if he showed any vicious temperament at all — if he had bitten before, and they knew about it, if he had run away before, and they knew about it. If he had done things of a vicious character, and they had knowledge of his previous acts to warn them, they are responsible. . . . I didn't know the kicking was the only thing they had to confine themselves to."

The only statement in the record relating to the "book

of account," referred to in the opinion at page 472, was as follows: "The defendants, subject to the plaintiff's objection and exception, were permitted to introduce in evidence a certain book of account kept by the defendants, in the regular course of business which, among other things, tended to show that the horse 'Jerry' had been rented almost each and every day for a period of several months before the accident. The court found that the entries were made in good faith and in the regular course of business before suit was brought and that the statute was complied with. The plaintiff excepted to this preliminary finding."

The exception to the judge's preliminary finding was not argued by the plaintiff in this court.

The jury found for the defendants. The plaintiff alleged exceptions.

The case was submitted on briefs.

*E. M. Dangel, L. E. Sherry & S. Rice,* for the plaintiff.

*R. H. Willard & M. J. Mulkern,* for the defendants.

PIERCE, J. This is an action of tort to recover for personal injuries sustained by the plaintiff when kicked by the defendants' horse. The declaration alleges that the horse "was of a vicious disposition, which was well known or ought to have been known to the defendants but was not made known by the defendants to the plaintiff." The answer is a general denial and an allegation that the plaintiff was not in the exercise of due care. The jury found for the defendants.

There was evidence tending to show the following facts: The defendants purchased the horse in question in June, 1922, when he was two years old; the accident happened about six months later. While the defendants owned the horse he had "bitten at a passer-by," and while the driver was carrying a bundle on his shoulder the horse took hold of the bundle with his mouth and bit it so "that it was necessary to use great force to get the bundle from the mouthhold of the horse." The horse had a nervous disposition and on one occasion shied at blowing papers on the highway, and shied at a swiftly passing automobile; he would frequently pull back his ears, and when left standing would

start up in the direction of the defendants' stable. One witness testified that on one occasion before the accident, when he was driving, the horse, without any apparent reason, of his own volition, started up and ran for a while, then walked for a while and then started running again; that he "kicked at the team to which he was attached and damaged the whiffletree"; that the next morning the witness told one of the defendants that the horse was a kicker.

In substance, it appeared from the testimony of the plaintiff that on December 15, 1922, the day of the accident, he was fourteen years of age and familiar with the use and management of horses; that his employer had arranged to hire a horse and wagon of the defendants for his use as a delivery boy; that he went to the defendants' stable to get the horse and wagon so hired and was given a horse by the order of one of the defendants; that a man who went into the stall to get this horse was squeezed up against the side of the stall and was not released until he had given the horse several violent blows; that while the plaintiff was driving the horse, a Christmas tree fell off the wagon, and he stopped the horse and alighted; that the horse started and he stopped him and tied the wheel; that he put the tree back in the wagon, placed one foot on the step, holding the reins in his hand, and the horse kicked the seat; that he got on and was fixing the seat when the horse kicked him in the right leg breaking it.

The plaintiff requested, and the judge refused to give, subject to the exceptions of the plaintiff, the following requests: "3. It was the duty of the defendants to furnish the plaintiff's employers with a horse suitable for the plaintiff to drive for the purpose for which it was hired.  4. If the defendants negligently furnished a horse for the plaintiff to drive which was unsuitable, and the plaintiff's injury has been occasioned thereby, it is not a defence that the defendants did not know that the horse was unsuitable.  5. The plaintiff's employers having hired of the defendants, who were public stable keepers, a horse and team for the plaintiff to drive and go to and from the Boston market, the defendants were bound to furnish for the plaintiff to drive a horse

and wagon reasonably safe for such a purpose; and if the horse was not reasonably safe for the plaintiff to drive and the plaintiff exercised due care on this occasion, then the plaintiff is entitled to recover."

The trial judge charged the jury in part as follows: "We want to know what kind of horse this Jerry was. You have got to find that out and determine it before you can return your verdict, because if he was a horse without any vicious habits, then this plaintiff isn't entitled to a verdict. . . . This horse couldn't be a kicker and not a kicker; there isn't any doubt about that. You can't have him a kicker and not a kicker, and arrive at a satisfactory verdict. He was one thing or the other. The plaintiff says he was a kicker, and the defendants say he wasn't. Now which was he? That is your first and extremely important proposition. The burden is upon the plaintiff to satisfy you by a fair preponderance of the evidence that this horse had this vicious habit of kicking, and that, in consequence of that habit and of the kick, he was injured . . . you will determine whether the plaintiff has satisfied you by a fair preponderance. . . . A horse may have vicious habits. They may be known or unknown by the owner of that horse. Where a person is injured by a vicious horse, a defendant is not liable for that injury in the absence of evidence showing that the owner knew or should have known of those vicious habits. . . . In the case you have there is evidence for your consideration both ways on that matter. For example, it appears from some of the witnesses that one of the defendants here was told about this horse kicking. If he was told, and he was told of a fact, why, of course, then he had knowledge. . . . So you have those three possible matters for consideration as far as we have gone: Was the horse a kicker? If he was not, verdict for the defendants. If he was a kicker, did the defendants know that he was? If they did, and the plaintiff was kicked by the horse, through no fault of his, then the plaintiff is entitled to your verdict. If the defendants did not actually know that the horse was a kicker, if the facts and circumstances of this case relating to this horse are such that you say they should have known he was a kicker, and

the plaintiff was kicked by the horse, through no fault of his, why, then the plaintiff is entitled to a verdict. If the horse was a vicious horse, and the defendants did not know about it or shouldn't have known about it, then the plaintiff is not entitled to recover, because . . . a man who lets another person take a horse is not liable for injury caused by that horse unless the horse had a vicious propensity which caused the injury, and that vicious propensity was known to the owner or should have been known to him. That is the law in the case so far as that part of it is concerned. . . . If you do find for the plaintiff, he having satisfied you by a fair preponderance of the evidence that he is entitled to your verdict, you do then pass to the question of damages. . . . So you see as you go over the case you have got a vicious horse alleged. Was he vicious or wasn't he? If he was, did the defendants know about it or should they have known about it? If they should have or did, was this plaintiff injured by reason of this viciousness which you would have found if you come to that consideration? . . . The gist of this action is the question of whether a person kept a vicious horse, which he knew to be vicious or which he should have known to be vicious, and that, in consequence of some vicious tendency or habit which the person knew of, or should have known of, the plaintiff was injured. The knowledge of the vicious habit must be the knowledge of some habit the exercise of which results in the injury. That is, I will say to you, Mr. foreman and gentlemen, that if some one had a horse that was — I was going to say a biter, but I won't, I will say a horse that bit people, and he knew that the horse bit people, but the horse, so far as he knew, had never been known to kick anybody, and there was no evidence in the case that a biting horse would be a horse reasonably expected to kick, and that horse kicked somebody, that would not entitle that person to recover. In other words, I want to impress upon you that the vicious habit or the vicious tendency must be known to the person, and it must be of such a character that, if any injury is caused by the horse, it must be said of the person who knows it, 'Why, you knew a horse that had such a tendency would do such a thing.' That is,

if a horse has a vicious characteristic or habit, and that habit is one which results in his doing certain things, one or all of them, then if the person who owns him knows it or should have known it, he is responsible for the consequences of the injury.   Otherwise he is not."

The position of the plaintiff is stated in his brief as follows: "It is not the plaintiff's contention that the defendant's liability is that of an insurer and that they become liable for injuries sustained by the plaintiff even in the absence of knowledge of prior acts of viciousness, or in the absence of other forms of negligence, but the plaintiff does contend that such liability is not dependent upon the resulting injury being caused by the identical type of vicious characteristic of which the defendants were aware before the injury.   It is the plaintiff's contention that a domestic animal, once having shown traits of viciousness, becomes undomesticated at least to the extent of imposing upon the owner or controlling person the duty of warning a prospective hirer of the existence of such a vicious characteristic."   *Popplewell* v. *Pierce*, 10 Cush. 509, 511, and *White* v. *Steadman*, [1913] 3 K. B. 340, 347, cited to support the above contention, are authorities only for the position that "If one knowingly keeps a vicious or dangerous animal which is accustomed to attack and injure mankind, he is *prima facie* liable for injuries done by it, without proof of negligence as to the manner of keeping it.   The negligence on which the liability is founded is keeping such an animal with knowledge of its propensities." *Cooper* v. *Cashman*, 190 Mass. 75, 76.   See *Bates* v. *Batey & Co. Ltd.* [1913] 3 K. B. 351, 355.

The horse being a domestic animal, an action will not lie against the owner or keeper for an injury done by the horse unless the injury be one which results from and is the natural consequence of the animal's vicious habits.   "It is the keeping of an animal known to be vicious and likely to cause injuries like those suffered by the plaintiff that makes the keeper liable when the animal causes such injuries."   *Fraser* v. *Chapman*, 256 Mass. 1, 4.   *Popplewell* v. *Pierce, supra.* *Goodwin* v. *E. B. Nelson Grocery Co.* 239 Mass. 232.   *Webber* v. *McDonnell*, 254 Mass. 387.

The book of account, in connection with all the other evidence in the case, was relevant on the issue whether the defendants knew or should have known that the horse in question had a vicious disposition of which the defendants were under a duty to warn not only the person who hired him, but any person who they knew or contemplated, or ought to have contemplated, would use him.

For the reasons stated the rulings requested could not have been given; and there is no reversible error in that part of the reported charge to which exceptions were taken by the plaintiff.

*Exceptions overruled.*