MARY FOLEY vs. THOMAS O'FLYNN.

PAULINE NARDI vs. SAME.

THOMAS J. NARDI vs. SAME.

Worcester.    September 25, 26, 1934. — December 4, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* Of stable keeper. *Animal. Horse. Evidence,* Relevancy.

A verdict for the plaintiff was warranted at the trial of an action of tort
for personal injuries against a stable keeper by evidence that the
plaintiff, a girl, hired of the defendant a pair of horses and a wagon
under the charge of the defendant's servant, the defendant knowing
that the wagon was to be decorated with paper bunting and was to
be used to carry a party of cheering school girls on a certain occasion;
that before the horses left the stable on the day in question one of
them manifested a vicious propensity to kick in the presence of the
defendant and under such circumstances that he knew or ought to
have known of the existence of that propensity; and that during the
ride that horse became restive and kicked the footboard of the wagon,
which caused injury to the plaintiff.

On the record of the trial above described, no prejudice to the defendant
nor reversible error appeared

(1) In the admission of a question and the negative answer thereto,
asked in cross-examination of a witness for the defendant who had
purchased the horses from the defendant shortly after the plaintiff's
injury and had used them for nearly two years and who had testified
that they were quiet and not vicious, as to whether he had been told
by the defendant or by any one "about an accident in which these
horses were involved" shortly before he purchased them;

(2) In the admission of a question and the affirmative answer
thereto, asked of the defendant in cross-examination, as to whether
he knew that the plaintiff in her wagon was likely to meet other
similar wagons filled with school girls.

At the trial above described, there was evidence that the horse kicked
and injured the plaintiff after one of some small balloons in the hands
of the girls on the wagon struck the horse and burst, but there was
no evidence that the balloon burst because of negligence of the
plaintiff. The defendant testified on cross-examination that before
the horses left the stable he saw balloons in the hands of some of the
girls and knew that balloons burst and that a bursting balloon would
have a tendency to frighten a horse, but that he said nothing to the
girls about the balloons. The trial judge instructed the jury that the

defendant would be liable only if he furnished a horse which, as he knew or should have known, had some vicious propensity and if the plaintiff, exercising due care, was injured by a manifestation of that propensity; and that it did not make much difference whether or not there were balloons on the wagon because, in the circumstances as described in the defendant's testimony, he could not rely upon the presence of the balloons as a defence. *Held*, that the instructions were sufficiently favorable to the defendant.

THREE ACTIONS OF TORT, the first two for personal injuries and the third, by the father of the plaintiff in the second, for consequential damages. Writs dated, respectively, December 13, 1929, December 5, 1930, and January 5, 1931.

The actions subsequently were amended into actions of tort or contract.

The actions were tried together in the Superior Court before *W. A. Burns*, J. Material evidence is stated in the opinion. Each plaintiff was required to elect between the counts in tort and the counts in contract, and each elected to rely on the counts in tort. In each action, the judge denied a motion by the defendant that a verdict be ordered in his favor. There were verdicts for the plaintiffs in the sums, respectively, of $5,000, $50, and $25. The judge reported the actions for determination by this court.

*C. W. Proctor*, for the defendant.

*J. F. McGrath*, for the plaintiffs.

LUMMUS, J. The defendant, an experienced stable keeper, let to Mary Foley and Pauline Nardi a pair of horses and a wagon under the charge of a servant, seventy years old and experienced with horses. The defendant knew that the wagon was to be decorated with paper bunting and was to be used to carry a party of cheering schoolgirls during the afternoon of the class games, in accordance with an annual custom for many years. On the road the horses became restive. One of them kicked the footboard on which rested the feet of the two girls named, who were sitting with the driver, and they were hurt.

The cases went to the jury upon counts in tort for negligence in furnishing an unsuitable horse. *Horne* v. *Meakin*,

115 Mass. 326. *Copeland* v. *Draper*, 157 Mass. 558. *Lynch* v. *Richardson*, 163 Mass. 160. *Greeley* v. *Jameson*, 265 Mass. 465. See also *Mitchell* v. *Lonergan*, 285 Mass. 266. This was not a case where a domestic animal injured a person to whom it had not been let, like *Webber* v. *McDonnell*, 254 Mass. 387, 389, *Fraser* v. *Chapman*, 256 Mass. 1, 4, and *Leary* v. *Keith*, 256 Mass. 157. The judge charged the jury that the defendant would be liable only if he furnished a horse to the plaintiffs which, as he knew or should have known because of acts done by the horse, had a vicious propensity to kick, or some other vicious propensity, and the plaintiffs, themselves in the exercise of due care, were hurt by a manifestation of such a propensity. The evidence met the requirements of the charge. The jury could have found that, before the horses left the stable on the day of the injury, the horse which later did the damage manifested a vicious propensity to kick, in the presence of the defendant, under such circumstances that he knew or ought to have known the existence of that propensity.

A witness for the defendant testified that he bought the horses from the defendant three days after the injury, and used them for nearly two years, and that they were quiet and free from vice. On cross-examination he· was asked by the plaintiffs, "Were you told by Mr. O'Flynn or by anybody about an accident in which these horses were involved three days before May 27, 1929?", to which he answered "No." To the admission of this question the defendant excepted. So far as appears, the question may have been admitted as preliminary to an inquiry as to possible admissions made by the defendant. We do not think it had any harmful bearing sufficient to warrant the sustaining of an exception.

On cross-examination the defendant was asked, subject to his exception, whether he knew that the plaintiffs in their wagon were likely ·to meet other similar wagons filled with other high school girls who were celebrating class day. He answered that he did. This was competent with regard to the degree of care that he ought to have exercised in selecting suitable horses for the plaintiffs. This testimony was

given almost at the beginning of the trial, and the record does not show that at that time the presence or conduct of other groups had been eliminated as one of the causes of the kicking. In this instance also, we do not think the admission of the question had any harmful bearing sufficient to warrant the sustaining of an exception.

On cross-examination the defendant testified that on the day of the injury, before the horses left the stable, he saw about three balloons, of the size of an electric light globe, in the hands of some of the girls, and knew that balloons burst and that a bursting balloon would have a tendency to frighten a horse. He said nothing to the girls about the balloons. The defendant excepted to the following passage in the charge: "there has been a square conflict of testimony about the balloons, and I don't think it makes much difference . . . whether there were balloons on this wagon, or whether there weren't balloons on the wagon, because . . . if there were balloons on this wagon when they started out, and the defendant saw balloons on the wagon as part of the decorations, and if he knew or ought to have known the likelihood of their bursting and being burst and hitting and frightening the horses, or either of them, and he said nothing to the girls about it by way of warning, he cannot now invoke that to protect himself against the claim of these plaintiffs." The only evidence of connection between a balloon and the injury was evidence of a statement by the driver, who died before the trial, that one of the balloons hit the horse and burst, and then the horse kicked and hurt the girls. There was no evidence that the balloon burst because of negligence of any of the plaintiffs. Eliminating any consideration of balloons as a defence, while requiring the plaintiffs to prove a vicious propensity on the part of the horse with knowledge or reasonable cause for knowledge on the part of the defendant, sufficiently protected the rights of the defendant. His duty was to use reasonable care to furnish a suitable pair of horses for the journey, having in mind all the existing and foreseeable conditions.

In each case the entry may be

*Judgment on the verdict.*