*Northern District*

No. 4783

**ROBERT SMITH PPA.**

v.

**THOMAS J. MORRISON**

(January 14, 1955)

*Gadsby, P. J.*   This is an action of tort wherein the plaintiff seeks to recover for personal injuries sustained as a result of falling off a horse hired from the defendant, Thomas J. Morrison. (*Brooks, J.*)

The plaintiff's declaration contains three counts. The first alleges the hiring of a horse which was represented as tame and safe but alleged to be unsafe and unmanageable. The second alleges that the saddle equipment rented with the horse was defective and dangerous as a result of which the plaintiff was thrown from the horse and was injured. The third alleges that the plaintiff hired a horse from the defendant and as part of the consideration paid by the plaintiff, the defendant was to provide an instructor to instruct him in horsemanship and to provide his safety while receiving said instruction and that the instructor provided was a minor who had insufficient experience in horsemanship to be considered an instructor and that as a result of the failure to provide a suitable instructor, the plaintiff was thrown from the horse and was injured.

The answer of the defendant is a general denial and contributory negligence. Defendant hereinafter referred to is Thomas J. Morrison; the finding being against him alone.

*At the trial there was evidence tending to show the following:*

The defendant is in the business of renting out horses and ponies at a certain charge per hour. The charge for the renting of a horse or pony was at the rate of $2.00 per hour. If the rider is a small child, they try to send out a person in case anything happens.

On December 26, 1953, plaintiff, an 11-year-old boy, went to the defendant's place of business with another boy of his own age named Leo Donaghue and Leo's mother, with the express approval of plaintiff's father, and asked to hire two ponies. At that time, the stable was supposed to be in charge of one Robert May, but he was not there that day. The only persons at the stable, other than riders, were defendant's son and a boy named Murphy, both about 15 years old. Both these young men frequented the stable and went out with young riders.

Young Morrison told plaintiff that they had only one pony available at the moment. This pony was rented to Leo Donaghue. Young Morrison then brought out a horse "much bigger than a pony" and urged plaintiff to get on it, which he did with help, saying that the horse was too big. Both boys gave young Morrison a dollar for half an hour's ride.

The horse which was supplied to plaintiff was a bay horse about 15 years old, and according to defendant, was gentle and had been owned by him for about a year. Young Morrison asked Murphy to take the plaintiff out. Murphy led the horse, with plaintiff on it, across the street to a field. There he gave plaintiff the reins and they walked the horses for a few minutes. Then, according to plaintiff, Murphy started his horse racing and plaintiff's horse galloped after Murphy's horse. Plaintiff lost his stirrup and fell off.

According to witness, Mrs. Donaghue, Murphy led plaintiff's horse for a while, then let go and did some "fancy riding" up and down with other riders. She

did not see plaintiff fall but saw him getting up. Murphy testified that plaintiff's horse started to trot when other riders trotted past him and plaintiff.

Plaintiff had never been on a horse. He had ridden a pony three times, one of these times being at defendant's stable. No inquiry was made of plaintiff as to his riding experience.

At the close of the trial and before the final arguments, the defendant made a motion for a directed verdict as follows:

The defendant, Thomas J. Morrison, moves that:

1. A verdict be directed for the defendant.

2. A verdict be directed for the defendant on the first count of the plaintiff's declaration.

3. A verdict be directed for the defendant on the second count of the plaintiff's declaration.

4. A verdict be directed for the defendant on the third count of the plaintiff's declaration.

The court made no ruling on any part of the defendant's motion for a directed verdict.

The defendant made the following requests for rulings:

1. Upon all the evidence and pleading, the court is not warranted in finding for the plaintiff.

2. At the time of the alleged accident, the plaintiff was not in the exercise of due care.

3. The defendant is liable only if he furnished a horse to the plaintiff, as he knew or should have known, had a vicious propensity, and the plaintiff in the exercise of due care was hurt by a manifestation of such propensity. *Foley v. O'Flynn,* 288 Mass. 504, 506.

4. The plaintiff cannot recover against the defendant unless he shows that the injury done by the horse, which is a domestic animal, was one which resulted from and is the natural consequence of the animal's vicious habits which were known or should have been known by the defendant. *Greeley v. Jameson,* 265 Mass. 465 at 471.

5. The defendant renting the horse to the plaintiff did not warrant that it was free from defects which he does not

know of and could not have discovered by the exercise of due care.

6. The plaintiff's injuries having resulted from a cause other than the vicious propensities or unsuitableness of the horse, the plaintiff cannot recover in this action against the defendant.

The court made the following finding:

"The court finds for the plaintiff against Thomas J. Morrison and assesses damages in the sum of $560.64 on Count 3 (includes interest). Plaintiff's request for rulings waived. Defendant's requests for rulings allowed as to No. 5; disallowed as to No. 1, 2, 6 and as to No. 3 and 4 on facts found."

The court found the following facts:

"Plaintiff, an 11-year-old boy, inexperienced in horseback riding, went to the defendant's stable with another boy of his own age. Each asked for a pony. A 15-year-old boy, son of the defendant, Thomas Morrison, hereinafter referred to as the defendant, with another boy of his own age named Murphy, appeared at the time to be the only persons in the stable, and that only one pony was available. Plaintiff's companion got on the pony.

"Young Morrison then brought out a horse much bigger than a pony, ready for riding. Plaintiff said it was too big, but he was urged by the stable boy to get on, which he did with help. Plaintiff and his friend each gave young Morrison a dollar. Murphy then got on another horse and led the plaintiff around for a while in a walk. Then he let go of the horse which the plaintiff was riding, and according to plaintiff started racing his own horse, whereupon the plaintiff's horse started galloping after him. Plaintiff lost at least one of his stirrups and fell off.

"Plaintiff had never ridden a horse and had only been on a pony three times.

"The stable was in charge of an adult named May who lived on the premises and was supposed to be on duty except at meal times. The accident happened shortly after 9 a. m.

"I find the Morrison boy was negligent in placing plaintiff on this horse without any inquiry as to his riding experience. He was further negligent in not making it plain to Murphy that he was to accompany plaintiff. It was likewise negligent for Murphy to have let go of the bridle of plaintiff's horse without knowing whether or not he could ride to a trot. The equipment was not defective. There was nothing wrong with the horse per se. He simply was not suitable for the plaintiff to ride unattended. If it can be said that either stable boy was the agent of the defendant, then defendant is liable for the injuries to plaintiff.

"Defendant testified that his son was permitted, subject to the adult, May, to let out ponies or horses. According to his testimony, both boys frequented the stable and that usually it was planned that some person went out with young riders "in case anything happened" and that his son or Murphy might be one to go out with young riders.

"I find and rule that from the general conduct of the business and the appearance of things on the morning of the accident, plaintiff had a right to assume that the defendant's son was authorized to rent him an animal, whether a pony or horse, and that Murphy was authorized to go out with him. I rule that both Morrison and Mrrphy were in effect agents of defendant. I rule that plaintiff was in the exercise of due care.

"This report contains all the evidence material to the questions reported."

(signed) Lawrence G. Brooks, Justice.

Whether or not the defendant was negligent and the plaintiff guilty of contributory negligence are questions of fact for the determination of the trial judge upon a consideration of all the evidence. *Callahan v. The Fleischman Co.*, 262 Mass. 437; *Mahoney v. Norcross*, 284 Mass. 153.

It can rarely be ruled as a matter of law that the burden of proof has been sustained, especially when,

as in these cases, "the attempt to sustain that the burden rests upon oral testimony introduced by the party upon whom the burden rests." *McDonough v. Metropolitan Life Insur., Co.*, 228 Mass. 450, 452.

The question of negligence and contributory negligence present questions of fact. *Ferreira v. Zaccolanti*, 281 Mass. 91, 92. *Noble v. Bos. Elev. Railway*, 287 Mass. 364.

The burden is on the defendant by statute to prove affirmatively that the plaintiff failed to exercise due care. G. L. (Ter. Ed.) c. 231, §5. It rarely can be ruled as a matter of law that the defendant has sustained that burden. *Dubois v. Powdrell*, 271 Mass. 394 at 396.

The trial judge has based his finding of negligence on two factors. He has found that it was negligent for the defendant's son to permit the plaintiff to ride a horse instead of the pony which was requested and he has also found that the stable boy Murphy was negligent in releasing his hold on the horse ridden by the plaintiff. He further found that the defendant's son and Murphy were both agents of the defendant, acting in the course of the defendant's business.

These findings render the denial of the defendant's requests numbered 2, 3, 4 and 6 proper since they became inapplicable in view of the specific findings of fact made by the trial judge. There is no error in the denial of defendant's request numbered 1, because it is based on all the evidence without the required specifications.

In conclusion, the Court was also correct in ignoring the defendant's request for a directed "verdict." There is no such procedure in the district court as a directed verdict. A verdict has application only to a jury case. See: Superior Court Rules (1954) Annotated, p. 259.

Therefore there being no prejudicial error, the report is ordered dismissed.

This case was argued before Gadsby, P. J., and Cavan, J., but Judge Cavan died before any action

was taken. The opinion was then submitted to Eno J., and he has concurred in the same.

Reuben H. Nitkin, for the plaintiff.

E. Joseph Pagliarulo, for the defendant.