Agnes, A.J.
1. Introduction
The defendant, Ernest George (George), has moved for summary judgment under Mass.R.Civ.P. 56, in response to plaintiff, James Konan’s (Konan) complaint alleging he was injured after falling from a racehorse owned by George. Konan argues that because the trainer, defendant Crane (Crane), was aware that the horse did not like to be ridden in the “wrong direction” and that he nonetheless allowed the plaintiff to do so without any warning, this constitutes evidence that the horse has a vicious temperament, and this knowledge should be imputed to George, the owner of the horse. 
2. Background
The essential facts are not in dispute. The plaintiff was a licensed thoroughbred horse trainer who suffered a fractured kneecap after being thrown from “Adriatic King,” a racehorse at Suffolk Downs Racetrack in East Boston, Massachusetts on or about November 21, 1997. The horse was owned by defendant George who had hired defendant Crane to train the horse. At the time of the accident, Crane was the only person who gave Konan permission to ride the horse. Tr. 1, page 58, lines 13-20. Konan did not ask any questions about the horse’s behavior prior to riding it, and it has not been his practice to do so in the past. During a conversation with Konan in July 1998 George asked the plaintiff why he was on the horse on the day of the incident. Tr. 1 page 156, line 20.
After his accident, plaintiff hired a private investigator, Michael Trainor, to investigate the circumstances of his claim. Trainor interviewed the defendant, Crane, who indicated that he was .aware that the horse could be difficult to ride. Crane also stated in his deposition that he knew that the horse did not like to be ridden in the “wrong direction.”[1] Crane Depo. T. pp. 23-28. There is no evidence that George had any knowledge that the horse had a vicious temperament.
3.Discussion

a. Standards Applicable to a Motion for Summary Judgment

“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Sup. 2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “(t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony's Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert denied, 446 U.S. 935 (1980). However, “[a] complete failure ofproof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, *2 depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). However, even in negligence actions, summary judgment is appropriate “if no rational view of the evidence permits a finding of negligence.” Roderick, supra at 949. Summary Judgment is appropriate when the moving party establishes that there is no genuine issue of material fact, and that the matter should be decided as a matter of law. Mass.R.Civ.P. Rule 56(c); Phelps v. MacIntyre, 397 Mass. 459 (1986).

b. The plaintiff’s claim fails as a matter of law because the evidence is not sufficient to establish that the horse had a vicious temperament within the rule of Lynch v. Richardson.

The plaintiff does not maintain that the alleged negligence of defendant Crane, the horse’s trainer, can be imputed to defendant George, the horse owner, under the theory of respondeat superior.[2] He instead argues that the defendant owner is liable because he knew or should have known that the horse had a vicious temperament or especially dangerous tendencies. The defendant relies principally on the theory approved by the Supreme Judicial Court in Lynch v. Richardson, 163 Mass. 160 (1895). In that case, the wife of a person who hired a horse and carriage from the defendant, the keeper of a livery stable, brought an action in tort for injuries she suffered as a result of the viciousness of the horse. The Court held that the defendant had a duty to furnish a horse free from dangerously vicious habits and that, if he knew or should have known of the horse’s vicious temperament, he could be held liable for the injuries to a third person. In Mitchell v. Lonergan, 285 Mass. 266, 270 (1934), the Supreme Judicial Court explained that the theory of liability recognized in Richardson, supra, and other similar cases, “does not arise directly out of contract, because the plaintiff in neither of those cases was a party to the contract of hire. They arise out of the duty imposed by law that one shall not negligently put forth in public places a dangerous instrumentality likely to injure third persons, with the intention that it shall be used by the class to which the plaintiff belongs.” Thus, in order for the plaintiff to recover there must be evidence that the defendant knew or should have known that “Adriatic King” was a horse with vicious propensities. The plaintiff has not offered such evidence, and an inference to that effect cannot be drawn simply from the incident that gave rise to the injury.[3] For example, in Dix v. Somerset Coal Co., 217 Mass. 146, 147 (1914), a horse allegedly “leered back his ears, showed his teeth, and nabbed at the defendant and kicked.” Yet this evidence was not sufficient to prove that the horse was vicious and that the defendant knew or should have known about this behavior. See also Goodwin v. E.B. Nelson Grocery Co, 239 Mass. 232 (1921) (A case involving a cat that bit a woman held that the plaintiff was not entitled to recovery unless it was proven that the cat was vicious to the knowledge of the defendant, and that this knowledge made it wrong to keep such an animal. The evidence that on one occasion the defendant had seen the cat show its teeth and pull the stocking of a child in the store was insufficient to warrant a finding of knowledge on the part of the defendant of characteristics likely to develop into an unprovoked attack of a violent nature.).
There are dangers associated with horses in general and perhaps race horses in particular, but these are widely known and should be obvious to persons who ride them, especially a trained person such as the plaintiff. See Fraumeni v. Aleppo Temple Shriners Activities, Superior Court No. 950204 (1997) (Borenstein, J.) (6 Mass. L. Rptr. 644). The Massachusetts Legislature has actually made such a finding in adopting a policy to limit liability for certain persons and organizations involved in equine activities. See G.L.c. 128, §2D (definition of “inherent risks of equine activities” includes “(t]he propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them”). Cases in which evidence has been regarded as sufficient to present a case for the jury are strikingly different than the present case. Contrast Foley v. O'Flynn, 288 Mass. 504, 506 (1934) (“The judge charged the jury that the defendant would be liable only if he furnished a horse to the plaintiffs which, as he knew or should have known because of acts done by the horse, had a vicious propensity to kick, or some other vicious propensity, and the plaintiffs, themselves in the exercise of due care, were hurt by a manifestation of such a propensity. The evidence met the requirements of the charge. The jury could have found that, before the horses left the stable on the day of the injury, the horse which later did the damage manifested a vicious propensity to kick, in the *3 presence of the defendant, under such circumstances that he knew or ought to have known the existence of that propensity”); Herbert v. Greenbaum, 248 Mass. 398, 399-400 (1924) (“The plaintiff testified that he went to work for the defendant seven months before he was injured; that he knew the horse which caused his injury was a ‘kicker’ and ‘notified defendant about it the first week he went to work for the defendant and couldn’t clean that horse for the reason that the horse kicked.’ There was also evidence tending to show that it was generally known by the employees in the stable that the horse was accustomed to kick. The plaintiff further testified that on the morning he was hurt he told the defendant that the horse was kicking and that he was afraid of it, to which the defendant replied that ‘he wanted this horse just as clean as the other horses.’ There was also testimony that the horse was kept in a box stall where there was room for two horses but ‘they didn’t put another horse [in the stall] because she was kicking . . . that this horse was kept in a box stall because she was a kicker; that kicking horses were kept in box stalls’; that on the morning of the accident the defendant said to the plaintiff‘I don’t care to know anything about excuses. I want all my horses clean when they go out’; that after receiving these instructions the plaintiff undertook to clean the horse and while so engaged it kicked him in the eye and knocked his left eye out’ . . . Apart from the testimony of the plaintiff as to what he told the defendant respecting the horse’s habit of kicking, the jury could have found that the defendant knew or in the exercise of reasonable care ought to have known of this habit”); Berson v. Butcher, 209 Mass. 208 (1911) (“There was evidence tending to show that the horse was vicious and was known to the defendants to be so. It could have been found that the horse had run away at least twice before while the defendants had it, under circumstances similar to those in this case; that it was nervous and liable to jump; and that the stableman had had to hold it for men to get into the team. One of the witnesses testified, without objection, that he was afraid of it, and another, with whom the horse ran away, testified that he told the defendant Brereton, since deceased, that he had run away and he wanted to change it. The same witness also testified that he did not regard the horse as safe. In addition to this the administratrix, the widow of the deceased, testified that in an interview with Brereton after the accident he spoke of the horse as ‘a bad horse; a crazy horse’; and said that he had told the defendant Butcher, also since deceased, that they ‘ought to get rid of the horse.’ This evidence warranted a finding that the horse was vicious and that the defendants knew it”).
The present case is far more like Eastman v. Scott, 182 Mass. 192, 194 (1902), in which the Supreme Judicial Court concluded that there was not sufficient evidence that up to the time of the accident the horse had a vicious habit of kicking or that the defendants knew or ought to have known that it had such a habit.
There is nothing from which to infer that they [the owners] knew more about the habits of horses than the ordinary man in whose business the use of horses is a mere incident. The animal had been in their possession but a month and a half, and had so far as appears never given but a single kick, and that in its stable and under circumstances from which to say that the kick was vicious is merely conjecture. These facts distinguish the case from that of Lynch v. Richardson, 163 Mass. 160. Assuming that the fact of the single kick in the stable was known to the defendants it was not enough to require the submission of the case to the juiy. Nor can it reasonably be inferred from the conduct of the horse at the time of the accident and on subsequent occasions that it had the vicious habit before the accident nor that the defendants should be charged with knowledge at that time.
4. Order
There are no material facts in dispute, and the plaintiff has failed to prove that the defendant George can be held liable because he has failed to produce any evidence that the injuries suffered were the result of the vicious nature of the horse. For the above stated reasons, defendant George’s motion for summary judgment is ALLOWED. It is also ordered that the defendant’s motion for attorneys fees and costs pursuant to G.L.c. 231, §6F is DENIED.

 The court takes judicial notice of the fact that in the United States race horses are trained to run in the counterclockwise direction. See, e.g., Commonwealth v. Milo M., 433 Mass. 149, 156 (2001). Shaw v. Boston American League Baseball Co., 325 Mass. 419 (1947). The practice in England appears to be the opposite — race horses are run in a clockwise direction. See e.g., “A Beginner’s Guide to Racing,” www.racingwebnews.com/beginners lthracing.htm (“The horses always race in a counter-clockwise motion around the oval”); wysiwg://23/http://horseracing.about.com/library/weekly/aa052100b.htm (“The Belmont was originally run clockwise in accordance with English custom over a fish hook shaped course which included part of the current training track. It was first run counter-clockwise in 1921.”).

 Plaintiff s counsel expressly waived any claim based on or arising out of the doctrine of respondeat superior, and instead relies exclusively on a theory he describes as “imputed knowledge” which he maintains arises out of the relationship of principal-agent. Pl.’s Opp. to Def. George’s Motion for Summary Judgment, p. 1. This is incorrect. The theory of liability on which the plaintiffs case rests grows out of the decision of the Supreme Judicial Court in Lynch v. Richardson, 163 Mass. 160 (1895), discussed in the text, infra. It is akin to the theory that an employer may be liable in negligence to a third party as a result of the conduct of an independent contractor when that contractor is engaged in activities that involve a high risk or degree of danger to others. Herrick v. Springfield, 288 Mass. 212, 214 (1934); American Coated Fabrics v. Berkshire Apparel 361 Mass. 165, 168 (1972). In these cases, a duty is imposed by the law on the owner of an animal or the person who engages an independent contractor to appreciate the risks associated with animals with a known propensity for viciousness or activities that involve a high degree of risk to the public.

 The only evidence upon which the plaintiff relies is a report that the horse could be difficult to ride, that one rider previously had been thrown from the horse, and that the horse did not like to be ridden in “the wrong direction.” See Plaintiffs Statement of Facts. Assuming the truth of these statements, they do not individually or taken together provide a basis for a finding that the horse had a vicious temperament. See Dix v. Somerset Coal Co., 217 Mass. 146, 147 (1914).