Rump, Appellant, vs. Bresnan, Respondent.

*February 9—March 2; 1915.*

*Instructions to jury: Prejudicial error: Livery-stable keepers: Negligence of driver: Defect in highway: Letting unsuitable horse: Knowledge.*

1. Although certain language which was sandwiched into that part of the charge which specifically related to one question in the special verdict was probably intended to apply to another question, it must in this case be deemed to have been understood by the jury to relate to the question under which it was given.

2. In an action for injuries alleged to have been caused by negligence of the driver of the vehicle in which plaintiff was riding, an instruction to the effect that concurrence of a defect in the highway and negligent driving would excuse the latter, was erroneous; and the error was prejudicial where, although there was sufficient evidence to warrant a finding that the driver was negligent, the jury found he was not.

3. In an action for injuries alleged to have been caused by negligence of defendant in letting a horse which was unsuitable for the purpose for which it was hired, the evidence is *held* not so clear as to warrant this court in saying as matter of law, contrary to a finding by the jury, that defendant was chargeable with knowledge of such unsuitableness.

Appeal from a judgment of the circuit court for Columbia county: W. J. Turner, Judge. *Reversed.*

Action for personal injury. Plaintiff was one of a party of six that hired a team, surrey, and driver from defendant for a drive in the vicinity of Kilbourn City. While driving they were met by an automobile and one of the horses became frightened and unmanageable. The surrey was backed into a ditch and upset, and plaintiff suffered a severe fracture of the arm. The negligence charged was an unsafe horse and a want of ordinary care on the part of the driver. The jury found (1) that the horse was unsuitable for the purpose let when driven by a competent driver; (2) that defendant was not chargeable with knowledge of such unsuitableness; (3) that the driver was in the exercise of ordinary care at the time plaintiff was injured; and (4) damages $200.

Judgment for defendant was entered upon the verdict and the plaintiff appealed.

For the appellant there was a brief by *N. E. Van Dyke* and *Grotophorst, Evans & Thomas,* and oral argument by *Evan A. Evans.*

For the respondent there was a brief by *W. S. Stroud* and *R. F. Clark,* and oral argument by *Mr. Stroud.*

Vinje, J. The special verdict submitted to the jury contained six questions. The first related to the suitableness of

the horse, the second to defendant's knowledge as to its suitableness, the third as to whether the unsuitable condition of the horse, if found, was the proximate cause of the injury, the fourth to the driver's negligence, the fifth as to whether or not the negligence of the driver, if found, was the proximate cause of the injury, and the sixth covered the question of damages. After explaining the nature of a special verdict the court read the first question and instructed the jury relative thereto. He then read the second question and gave instructions as to it, and likewise as to the third question. The charge then proceeded:

"The fourth question is: 'Was the driver, Ryan, in the exercise of ordinary care at the time plaintiff was injured?'

"Ryan was a competent driver in the language of the authorities, he being so conceded by the defendant. The question is, Did he, at the time that this accident occurred, exercise ordinary care? He was driving this team, which was hitched to this buggy with the load that has been described, up the hill as has been described. The hill had, at a certain point at a comparatively level place, a sharp turn, so that anything coming down the hill would not be seen until it came fairly close to him. An automobile came around the corner. There is no evidence that the automobile was driving at an unusual rate of speed. Mr. Ryan was engaged in conversation with the man sitting in the seat with him. The team became apparently startled or frightened, and the question is whether at that time Mr. Ryan exercised the care, prudence, and skill which a person so situated would ordinarily exercise—which the great mass of persons so situated would ordinarily exercise under the same or similar circumstances. That is the question put to you by the court to answer.

"In considering this question you can consider the rate at which the machine was going, the rate at which the team was going, the attention he was giving to his driving, the question as to whether or not the horses became momentarily or suddenly frightened, the question as to whether or not he had the horses under control, the question as to whether or not he exercised due care to maintain his control over the horses, and in all other facts and circumstances made to appear in

the case, including the condition of the roadway with the ditch or ditches upon the side, and any other facts that may probably bear upon this question which has been made to appear by the evidence. If, from no vicious propensity of the team, but from some cause which makes an ordinarily gentle and safe horse suddenly stop, shy, or back up, and so act that they are momentarily without the control of the driver, if the control of the horses would have been immediately regained by the driver if there had been no defect in the highway and while in this condition, of want of control, the rig comes upon a defect in the highway which caused the accident, then this defect is the proximate cause of the accident, and the acts of the horses and driver are not the proximate cause. Gentlemen of the jury, if this accident was caused by a defect in the highway together with negligence on the part of the defendant or of the driver, then you should answer that question in the affirmative; if it was caused by a combination of the negligence of the authorities in not maintaining the highway in proper condition with that of the driver, then the question should be answered in the affirmative.

"This question number 4 is to be determined by measuring Ryan's conduct with the conduct of an ordinary competent driver. He was sent out as a competent driver, and the question is, Did he exercise the care that a competent driver would have exercised under the same or similar circumstances? You may consider the manner in which he was driving, the attention he was giving to his driving, considering the conditions that existed at and near the place of the accident; the attention he was giving to the approach of automobiles or other vehicles, the condition of the highway banks and ditch, the fact that the road made a turn, the width of the roadway, the actions of those in the auto, and all other facts and circumstances made to appear by the evidence.

"The burden of proof, gentlemen of the jury, upon this question, in order to be decided in the affirmative, is also upon the plaintiff.

"If the man on the seat caused the horses to back by seizing the lines, and the horses backed up in consequence thereof and caused the wheel to go into the ditch, then that question should be answered in the negative, for then there was no negligence on the part of the driver of the vehicle.

"So that, gentlemen of the jury, this question number 4, 'Was the driver, Ryan, in the exercise of ordinary care at the time plaintiff was injured?' must be answered by 'Yes' or 'No' as you find the fact to be, and that answer must be found upon the credible evidence in the case.

"Of course, gentlemen of the jury, you may bring to bear upon this question the knowledge and experience that you have had and that you possess with reference to the transaction which occurred at the time, and also the knowledge and experience you have had or that you possess with reference to horses and their characteristics."

This was followed by the reading of the fifth and sixth questions with appropriate instructions as to each.

We are now asked by respondent to say that so much of the charge given under question 4 beginning with the words "If, from no vicious propensity of the team," and ending with the sentence, "if it was caused by a combination of the negligence of the authorities in not maintaining the highway in proper condition with that of the driver, then the question should be answered in the affirmative," was intended to and did relate to question number 3 and was so understood by the jury. That it was so intended by the court is probable, but that it was so understood by the jury is doubtful. It was given under question 4. That question was twice specifically named by the court in the charge that follows the first part claimed to relate to question 3, and there is no doubt that the first part of the charge under question 4 relates to it. Where a portion of a charge is so sandwiched in between language unmistakably belonging to the question under consideration, we cannot reach the conclusion that the jury understood it to relate to the previous question. It must be deemed to have been understood to relate to the question under which it was given.

So understood it was erroneous. There may be negligent driving on a defective highway. A concurrence of a defect in a highway and negligent driving thereon does not excuse the latter. Yet that is what the court told the jury several

times by instructing them in such case to answer the question in the affirmative.

Since there was evidence in the record sufficient to sustain a finding of negligence on the part of the driver the error became a prejudicial one, and the judgment must be reversed.

We are urged by plaintiff's counsel to change the answer to the second question from "No" to "Yes," and say as a matter of law that defendant was chargeable with knowledge of the unsuitableness of the horse, and to permit plaintiff at her option to take judgment for the amount of damages found by the jury or have a new trial.

The evidence of knowledge on the part of the defendant of the unsuitableness of the horse is not so clear as to warrant such a change in the verdict by the court. It is true defendant was informed by the man who sold the horse to him that one reason for selling him was that his wife was afraid to drive tourists to and from Kilbourn City with him. But defendant, prior to the accident, had never driven the horse, and no complaints about him had come to him from the drivers. It may be that a horse that a woman is afraid to drive is not safe for a competent man to drive. The jury, however, negatived such conclusion and we cannot say they were wrong.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.