VANINGAN (PHYLLIS), Respondent, vs. MUELLER, Appellant.

*May 13—June 20, 1932.*

528

530

For the appellant there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman M. Quale.*

For the respondent there was a brief by *Hill & Miller* of Baraboo, and oral argument by *James H. Hill.*

FOWLER, J. The appellant claims as error that: (1) There was no evidence to warrant submitting the case to the jury and his motion to direct a verdict should have been granted. (2) The court should have submitted questions requested by the defendant whether the plaintiffs were guilty of contributory negligence. (3) The court refused to give instructions requested by the defendant's counsel. (4) The court received evidence objected to by defendant. (5) The court rejected evidence offered by the defendant. (6) The trial judge presided unfairly to the prejudice of the defendant. (7) The plaintiff husband in testifying brought to the attention of the jury that the defendant carried indemnity insurance. (8) Plaintiff's counsel by questions to a witness insinuated but offered no proof of ill-treatment of the horse in the stable that changed its disposition. (9) If no one error justifies reversal, the cumulative effect of all the errors requires it.

(1) The contention that there was no evidence to take the case to the jury cannot be upheld. It is based on the idea

that the plaintiff was thrown by the horse's bucking and it was never known to buck before, and that as a dog, before the statutory enactments changing the common-law rule as to scienter, was entitled to its first bite, a horse is entitled to its first buck. We cannot agree to this proposition as applied to a horse let out by a liveryman for hire.

The two cases stand on a somewhat different footing. The case of the husband, who contracted directly with the defendant to furnish the horse, clearly may properly be considered, as the learned trial court considered it, a case on contract for breach of warranty. The complaint is so worded as to state a case on contract or in tort for negligence and supports submission on either theory. In the husband's case the findings of the jury clearly support the judgment. The first question of the verdict uses the term "special warranty." Whether the word "special" be taken as equivalent to the word "express," as meaning an expressed promise, or as referring to the fact that the horse was warranted as suitable for a "new" as distinguished from an experienced rider, is immaterial, as a liveryman furnishing a horse for hire impliedly warrants that the horse furnished is fit for the purpose for which it is let. *Horne v. Meakin,* 115 Mass. 326; *Conn v. Hunsberger,* 224 Pa. St. 154, 73 Atl. 324. Other decisions which treat the action as one founded on contract state the warranty or contract obligation of the liveryman to be that the horse is free from defects as far as he knows or that could be discovered with reasonable care (*Copeland v. Draper,* 157 Mass. 558, 32 N. E. 944; *Cooper v. Layson Bros.* 14 Ga. App. 134, 80 S. E. 666) ; that the horse is free from any secret fault that renders it unfit for the purpose for which it was intended (*Troop A Riding Academy v. Steverding,* 39 Ohio App. 560, 177 N. E. 601). *Windle v. Jordan,* 75 Me. 149, states that "The law settles the contract upon the breach of which the plaintiff counts," and impliedly, though not expressly,

states that the contract is "That the horse is kind and free from vice." Some of the cases brought by a plaintiff who hired the horse himself sound in tort. Such cases state the basis of the action as negligence in failing to discover the suitability, or in letting a horse not suitable for the purpose intended (*Dickie v. Goelzer & Henderson*, 95 Ark. 78, 128 S. W. 561); in letting a horse with vicious or dangerous propensities without having taken reasonable precautions to ascertain that it was free from them, or wanting in ordinary care for protection of the public against such propensities (*Logan v. Hope*, 139 Ga. 589, 77 S. E. 809). Another, in which it does not appear whether the case was considered as in tort or on contract, states the duty of the liveryman to be to furnish a horse that has no vicious habit so far as known or could have been ascertained by exercise of reasonable care. *Lynch v. Richardson*, 163 Mass. 160, 39 N. E. 801.

The case of *Conn v. Hunsberger, supra*, which contains a fuller discussion of the liveryman's contract and duties than any other, states that the warranty is that the horse is suitable and that it is free from vicious habits which the defendant knows or by the exercise of proper care could have discovered, and seems to consider these two statements as equivalent. But whether this be so or not, and whether the warranty be the one or the other, or as stated in any one of the cases above cited, the verdict in the husband's case seems to us sufficient to support a judgment for breach of contract; for the jury found both unsuitableness and evil characteristics that the defendant ought to have known or discovered in the exercise of ordinary care, and that the evil characteristics which rendered the horse unsuitable caused the injury. In none of the cases above cited, whether conceived as on contract or in tort, was it considered necessary to prove knowledge of the evil propensities causing the injury, failure to prove which forms the basis of defendant's claim that a verdict should have been directed in his favor.

Some decisions of this court are cited by defendant as sustaining his contention. Two of these, *Ohlweiler v. Lohmann,* 82 Wis. 198, 52 N. W. 172, again before the court in 88 Wis. 75, 59 N. W. 678, and *Rump v. Bresnan,* 160 Wis. 179, 151 N. W. 251, were between a liveryman and the one to whom the horse was let, but both were brought and treated as in tort and the contract obligation of the liveryman was not considered. In the first, "The action was founded in tort, and not on any contract relation" (p. 204). The negligence charged was letting the horse with knowledge of the vicious habit that caused the injury. Knowledge of the vicious habit was admitted and the defense was that the defendant fully informed the plaintiff of it, and this was the only issue tried. In the second the charge of negligence was furnishing an unsuitable horse, and one specific question put to the jury was whether the liveryman was chargeable with knowledge of the unsuitability, if found. Not actual knowledge, but chargeability with knowledge, which would depend on the degree of care exercised in ascertaining whether the horse was suitable, was considered as the issue, so that it would appear that the common-law rule of scienter applicable to injuries done by domestic animals where no contractual relation is involved was considered not applicable. The other Wisconsin cases relied on, *Kocha v. Union Transfer Co.* 188 Wis. 133, 205 N. W. 923, and *Fox v. Koehnig,* 190 Wis. 528, 209 N. W. 708, involved injuries done by a horse, the one by a led horse and the other by a loose horse, to persons on the highway, and did not involve horses let out by liverymen, so that the duty of a liveryman either to the one to whom he lets out the horse or to third persons was not involved or considered. We do not consider these cases as affording basis for the contention that the common-law rule referred to applies to the husband's case.

As to the wife's case, some of the decisions above cited contain dicta to the effect that her case necessarily sounds in

tort and one or two that the common-law rule as to scienter in cases involving injuries by animals applies. It is to be noted, however, that the only two of all these cases that involve injuries to others than the person to whom the horse was let, both which are treated and considered as in tort, hold that it is not necessary to prove scienter. *Horne v. Meakin, supra; Logan v. Hope, supra.* In the *Horne Case* a father hired a horse for his son to drive the son's family to a funeral, and the son's wife was injured by the horse's running away. This case expressly states that proof of scienter was not necessary to entitle the wife to recover and states that the duty of the liveryman is to furnish a horse suitable for the purpose for which it is let. In the *Logan Case* one other than the driver of the horse was injured. The case does not expressly state that proof of scienter is not necessary, but states that the duty of the liveryman is to use ordinary care to protect the public and that he is liable unless he has no knowledge and no reasonable grounds for knowing the vicious propensities of the horse. It would seem an anomaly that a different rule of liability obtained or different proofs were necessary to establish liability in a husband's suit to recover his damages resulting from the viciousness of a horse hired by him expressly for the use of his wife than in the wife's suit to recover for her own injuries so resulting. As to the Wisconsin case cited brought against a liveryman perhaps on the assumption by the pleader that proof of scienter is necessary in a suit to recover for injuries inflicted on the plaintiff by a horse negligently let to him, the assumption is contrary to every case above cited, whether sounding in tort or on contract. An entirely different situation is involved when a liveryman violates his duty as a liveryman as a result of which injury results to the person for whose use he lets a horse, than when injury is inflicted by a horse loose or being led on the highway. In the one case the evil of biting or kicking is in-

volved, and the owner enters into no contract relation; in the other the liveryman contracts that the horse is suitable for the use for which it is let and the evil propensity unfits the horse for that use. If it would be necessary to hold, in line with the case of the led horse or the horse loose on the highway, the *Rump* and *Kocha Cases* cited above decided by this court, that as to a person injured on the highway by the vicious act of a let horse for whose use the horse was not hired, proof of scienter is necessary, it is not necessary so to hold, and it would be unreasonable so to hold, when the person injured is the one for whose use the horse is hired. If another than the injured person hires the horse expressly for the injured person's use when the hirer is not the agent of the injured person so as to enable the injured person to sue upon the contract, but the use of the horse is hired and the contract of hire is made as a gratuity by the hirer to the injured person, especially if the injured person be a member of the hirer's family, the injured person may sue upon the contract as one made for his benefit under the familiar rule of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440. The reason of the rule in that case is as applicable to the instant case as to cases where the contract is one for the payment of money to the person suing. The contract in both cases is for the plaintiff's benefit, and the plaintiff should be permitted to sue upon it in the one case as well as the other. All that is said as to the privity necessary to support an action on contract in the *Tweeddale Çase* is as applicable to the instant case as to that. See 39 Yale Law Journal, 425 *et seq.*

(2) The question of contributory negligence which defendant requested to be submitted to the jury was framed on the theory that the cases are in tort grounded on negligence. The question was not appropriate to an action on contract. It is true that the conduct of the plaintiff husband was involved; and that if his own misconduct caused the horse to

misbehave with resulting injury to himself consequent upon the injury to his wife he could not recover. But in such case his misconduct, not the defendant's breach of contract, would cause the injuries, and the finding of the jury that the "evil characteristics" caused them negatives the idea that the husband's misconduct caused them. Defendant's counsel claims that even considering the case as on contract the question should have been submitted. But if a question as to his conduct were to be submitted in an action on contract it would seem to be whether the conduct of the horse was caused by the plaintiff, which was negatived by the finding stated. The question having been put whether the evil characteristics of the horse caused the injuries, it was not necessary to inquire whether something else caused them.

As to the wife, the conduct on her part claimed to have caused her injury is holding the reins high and the means taken to stop the horse. We do not see that her conduct in this respect was beyond what the ordinary inexperienced woman rider would be expected to do who was attempting to stop a horse that was running away with her. We consider that the evidence would not warrant a finding that her conduct, rather than the evil characteristics of the horse, caused her injuries. Besides, if her conduct is subject to criticism, as said above respecting the husband's conduct, the finding of the jury that her injuries were caused by the evil characteristics of the horse negatives the idea that they were, caused by her conduct.

(3) Defendant's counsel contends that two instructions which he requested should have been given. One was rather long and to the general effect that one letting a saddle horse for hire does not insure or guarantee that the person riding it will receive no injury, or that the horse will not do any unexpected thing, or that the horse is free from fault or defect. All this is true, but not necessarily called for by the situation involved. It was nowhere suggested to the jury

that the defendant was such an insurer or guarantor and there was no reason to believe that the jury would consider that he was such. The requested instruction also contained a statement as to the duty of the liveryman to use ordinary care in selecting saddle horses suitable for riding, which appears to be correct enough, although somewhat elongated and over-elaborated. But the court gave in connection with the question of the verdict to which the requested instruction applied, a correct definition of ordinary care, stated that negligence is a want of ordinary care, and followed this with the statement that if the horse had evil characteristics and defendant did not know thereof, it was his duty to exercise ordinary care in endeavoring to discover such characteristics. We consider that this sufficiently defined to the jury the duty of the defendant. It would perhaps have been more appropriate in a case founded on breach of warranty to have expressed the idea of the requested instruction by saying that the defendant in letting the horse impliedly warranted that he had used ordinary care in selecting the horse, rather than it was his duty to do so. But both forms of expression convey the same idea, and if the court unhappily used the less appropriate language the defendant's requested instruction was equally faulty.

The other instruction requested was in effect that it is common knowledge that some risk is involved when an inexperienced rider tries to ride a horse and that the fact the jury was to determine was whether the proximate cause of the injury was the vicious characteristics of the horse or the rider's inexperience. In our view this was not a proper instruction. Inexperience could not constitute a proximate cause in any case. The act or omission of a rider might of course constitute the cause of an injury to him, and the acts or omission might spring from inexperience, but it would be the act or omission, not the inexperience, that operated as the cause. Just what the first part of the instruction was aimed

at and what the jury would infer from it is not plain. The complaint in this respect is that the wife's manner of holding or sawing on the reins, or the husband's coming up from behind on a gallop, might from the evidence of one of the witnesses, in the opinion of the jury, have caused the horse to buck irrespective of any conduct of the horse for which the liveryman was responsible or liable. If this was the idea that the instruction was meant to convey, the idea was hidden rather than expressed. The court did instruct as to causation that the jury were to determine whether the evil characteristics of the horse caused the injury, and that if the injury was not so caused they should answer the question as to causation in the negative. It has been already stated that this was a sufficient instruction as to causation attributable to the husband, and in absence of requests calling attention to specific acts or omissions of the wife that may have so operated we consider it sufficient as to her conduct also. The court's instruction was equivalent to saying that if the plaintiff's injuries were caused by something else than the evil characteristics of the horse, the jury should not find that they were caused by the evil characteristics, and this covered the idea of the requested instruction, and although for want of particularity the instruction was not very helpful it was as much so as was the instruction requested. We consider that there was no prejudicial error in refusing the instruction requested.

(4) The evidence that defendant claims was wrongly received was that the horse ran away six months after the plaintiff's injuries were received, and that persons complained of the conduct of the horse after it threw the plaintiff. On objection the evidence as to the runaway was stricken as soon as the time of the occurrence appeared. Evidence of only one complaint was received and that a month or so after the plaintiff was thrown. The objection to this question was promptly made and should have been as

promptly sustained. It was plainly hearsay. Complaints made before the occurrence involved would have been receivable on the question of the owner's knowledge of the horse's habits or conduct, even though in a sense hearsay, but there was no possible excuse for plaintiff's counsel asking about complaints made afterwards or the judge's permitting such an inquiry to be answered. However, this error seems to us not sufficient to overthrow the judgment. The objectionable evidence was not of such purport or effect that it can be said the verdict would have been otherwise without it.

(5) The evidence offered by the defendant that was rejected was to the effect that while owned by the farmer who sold the horse to the defendant, it was not frightened by threshing machines, silo fillers, and the like; that the stable habits of the horse were quiet and gentle; that the horse was the only one ridden by the members of the farmer's family. The first two items of evidence seem to be material, the third not, though harmless. The rejected evidence seems too inconsequential to have influenced the result of the trial.

(6) The conduct of the trial judge complained of is illustrated by his saying before the jury that only habits of the horse on the road were material; that the stableman who furnished the horses "felt or believed" that the horse was "gentle and quiet" was immaterial, as the question was "What is the fact," although letting stand the answer that the witness did "so think or he wouldn't have furnished the horse;" and criticising defendant's counsel for asking the stableman whether from his experience with the horse she was a gentle or quiet riding horse because it was leading, and saying "The question suggests the answer you want and he will give it to you—You may answer." While it is true that the habits of the horse while being ridden was the ultimate fact to be inquired into, stable or other habits that

tended to show gentleness and that the horse was not subject to fright were material, as they bore on whether the defendant had reason to believe that the horse was safe, and should have been received. And when answers to questions are permitted to stand, the trial judge should let them stand for what they are worth in the jury's opinion, without insinuating that they are worthless. The ruling should be to admit or reject subject to fair comment respecting the weight of evidence or credibility of the witness, if occasion warrants. We consider that the matters complained of do not constitute unfairness or prejudicial conduct on the part of the trial judge and if subject to criticism they are too inconsequential to affect the verdict.

(7) Plaintiff's counsel asked of the husband whether the stableman who supplied the horses said anything to him about a guide. On cross-examination defendant's counsel asked whether a guide was mentioned and the answer was given "By some insurance adjuster, yes." The answer was promptly stricken and the witness admonished to "Just answer the question; just what he (counsel) asks." If the answer was given for the purpose of insinuating that an insurance company would have to pay the damages assessed the conduct of the plaintiff was reprehensible, but even so defendant's counsel called forth the answer by the form of his question, which somewhat mitigates the offense of the witness, and the court's prompt striking of the answer and admonition to the witness tended to avoid any prejudicial consequence.

(8) On cross-examination of the farmer who sold the horse, plaintiff's counsel put the questions: "You don't know what this negro (stablehand of defendant) did to it?" "You don't know what was done to change its habits?" No proof was offered that the negro did anything to the horse, or that anything was done to change its habits. The ques-

tions were highly improper. No evidence of misuse in the stable was given, and if it was intended to introduce such evidence asking these questions was useless and senseless.

(9) Defendant's counsel concedes that no one of the errors indicated justifies reversal but contends that the cumulative effect of them all requires it. The evidence is so strong in support of the verdict that we cannot assume that the verdict would have been different had the trial been entirely without error. Under sec. 274.37, Stats., this court should not reverse a judgment for error unless in our opinion, after examination of the entire record, it appears that the error complained of has affected the substantial rights of the party seeking reversal.

*By the Court.*—The judgment of the circuit court is affirmed.