This is a suit in which plaintiff, an emancipated minor over the age of 18, seeks to recover damages for injuries sustained as a result of being thrown from a horse which had been rented from the Broadmoor Riding Academy, owned and operated by the defendant, Schuster. The Indemnity Company of North America, public liability insurer of Schuster, was joined as a party defendant.
Plaintiff bases her cause of action upon the allegations that the horse which she hired for the purpose of riding, by the name of "Little Dan," was of a vicious, fractious and highly nervous disposition, to the knowledge of the owner and employees of the riding academy, who failed to impart such knowledge of the dangerous propensities of the said horse to the plain, tiff. Plaintiff's petition further alleged that the horse was of a type which might easily become frightened, was therefore dangerous to its rider, and that a duty of warning prospective riders that they should ride said horse at their peril was therefore laid upon defendant Schuster and his employees.
After trial there was judgment for defendants, from which judgment plaintiff appealed.
It is shown that plaintiff and her escort, a United States Army Sergeant, on April 29, 1944, rented two horses from the Broadmoor Riding Academy, and, after riding for about thirty minutes, stopped their horses in the vicinity of Centenary Stadium in the City of Shreveport for the purpose of watching a drill by air corps cadets. According to the testimony of plaintiff, who was the only witness as to the incidents in connection with the accident, her horse, later identified by the name of "Little Dan," frightened by a sudden burst of music by the band, ran away. Plaintiff was unable to bring her horse under control, and, after running for several blocks, the horse tripped or fell on a paved street near the stadium, throwing plaintiff violently to the street and causing a serious and painful fracture of the bone of her left thigh.
It is contended on behalf of plaintiff that the defendant, Schuster, and his employees were guilty of negligence on three counts, any one of which would be sufficient to entitle plaintiff to recover. These three counts of negligence may be briefly set forth as follows:
(1) That the employee of defendant who furnished the horse to plaintiff knew the animal to be high-spirited, afraid of noises, and of such a nervous disposition as might lead him to throw a rider.
(2) That it was negligence on the part of defendant's employee, after plaintiff's request for a gentle horse, to assure her that she was receiving such an animal, when, as a matter of fact, the horse was not of a gentle disposition.
(3) That plaintiff contracted to hire a gentle horse and defendant's employee breached the contract of hire by failing to furnish plaintiff with such an animal. *Page 520 
[1] Having made the necessary allegations in her petition in support of these claims, the burden of proof rested upon plaintiff, no matter in how slight a degree, to make out a case.
Conceding, only for the purpose of argument, the correctness of plaintiff's position under the contentions set forth, it is nonetheless essential that plaintiff fulfill at least a minimum requirement in the way of proof by establishing that the horse furnished her by defendant's employee was not gentle, and that such lack of gentleness was known to defendant and his employees, or could and should have been known to them.
It is to be observed that we have phrased this proposition in the manner most favorable to plaintiff, one which would permit the allowance of her claims, if she had fulfilled even the barest requirements in the way of establishing her case. We have proceeded in this manner because we propose to set forth in this opinion the evidential facts developed on trial of the case which convincingly and finally establish plaintiff's failure to fulfill even so slight a burden in the way of proof.
As we have stated above, plaintiff was the only witness who testified as to the circumstances immediately surrounding the incident of the run-away which led to the accident. She testified that on the date in question, accompanied by Sgt. Edward Steckbauer, she went to the Broadmoor Riding Academy and asked for a gentle horse, notwithstanding the fact that she had been riding practically all her life; that she was furnished a horse (later identified as being the horse known as "Little Dan") by one of the academy's employees, and proceeded, accompanied by her escort, to ride over some dirt roads and fields in the neighborhood for a brief period of time, eventually stopping in the neighborhood of the Centenary Stadium for the purpose of watching a cadet drill; that the music of a band which had been playing for some five or ten minutes suddenly increased in volume, startling the horse she was riding, which bolted; that, despite her efforts to control the animal, she was finally forced to drop the reins, and that the horse fell at the curb of a nearby paved street, throwing her and causing serious injuries.
It is significant that plaintiff did not testify to any actions of the horse, prior to the time of the incident related, which indicated it to be other than gentle and easily handled. While we have no disposition to doubt plaintiff's story, nonetheless, it is noticeable that no attempt was made to procure the testimony, either in person or by deposition, of her escort, although plaintiff testified she believed him to be out of the service and presently located in the State of Wisconsin, and offered no explanation as to why she did not avail herself of what would certainly have been effective and convincing corroboration of her own narrative of the incident which is the basis of this suit.
On the points bearing upon the disposition and characteristics of the horse, plaintiff perforce relied upon the testimony of defendant's employees, and presented two negro grooms, who were employed at the riding academy, as witnesses. We have carefully examined the testimony of these witnesses and find nothing which would indicate that the horse "Little Dan" was anything but a gentle, rideable animal without any of those quirks and foibles of animal nature which would have rendered him dangerous or unsafe in any degree whatsoever. It is true that there is some testimony on the part of these witnesses as to the fact that the horse was a little "high-spirited," "nervous" and "touchy" to the extent that he would shy from sudden noises and objects and would become startled upon being approached from behind. But these characteristics evidence none of the elements of meanness or fractiousness which would indicate an unruly disposition or detract from the common acceptation and understanding of the term "gentle" as applied to a horse.
The defendant, Schuster, and the manager of the academy, one McDonald, both testified that they were thoroughly acquainted with the horse in question, and both testified that he was of a gentle disposition, *Page 521 
favored by ladies for riding, and that there was nothing in his record which indicated a bad disposition or mean spirit.
But, by far the most convincing testimony in the record was givin by Dr. G.M. Stamper, who sold the horse, "Little Dan," to the defendant, Schuster, after having owned him for some three or four years. This witness testified that the horse was perfectly gentle, that he had been bought and used for the special pleasure of his two young daughters, who rode the horse frequently.
Some attempt was made on behalf of plaintiff to show that "Little Dan" had a record of bad behavior, evidenced by his running away from other riders, but these facts were not established.
Counsel for plaintiff, in his elaborate brief, introduces his argument on the law of the case with the statement:
"The law in Louisiana is the same whether the domestic animal be a cat, dog, goat or horse."
This statement is made by way of explanation of counsel's citation of numerous Louisiana cases involving liability for injuries caused by dogs, among which we find Mercer v. Marston, 3 La. App. 97; Bentz v. Page, 115 La. 560, 39 So. 599; Perez-Sandi v. Berges, 12 La. App. 191, 125 So. 185; White v. Sens, 13 La. App. 343, 127 So. 413; Hartman v. Aschaffenburg, La. App., 12 So.2d 282.
We find it unnecessary to enter into a discussion of the general premise as stated by counsel, to which reference is made above, in view of the fact that, in this instance, we are quite willing to accept the pronouncements made by our Courts on the general proposition involving liability of owners of animals.
The opinion of Judge Carver in Mercer v. Marston, supra, comprehends a well-considered discussion of liability, and enunciates the general rule, from which our Courts have not departed, that liability rests upon injury by an animal and fault or negligence on the part of the owner.
It is clear in our minds that Article 2321 of the Civil Code cannot be considered by itself in a determination of this point, but must be correlated with the provisions of Article 2315 and 2316. This was the view taken by Judge Carver and developed and discussed at some length in his opinion.
Article 2321 of the Civil Code, which is made the basis of attempts to recover in actions of this character, reads as follows:
"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
We are deeply impressed by the similarity between the provisions of this codal article and the provisions of Title IX of Book IV of the "Institutes of Our Lord Justinian" as follows:
"A noxal action was established by a law of the Twelve Tables where animals destitute of reason have committed any damage in play, or through anger or savageness; and when such animals are surrendered as an equivalent for the damage, they benefit the defendant by releasing him from liability, for the reason that it is so stated by the law of the Twelve Tables; for example, where a horse known to be vicious kicks anyone, or an ox which is accustomed to do so attacks anyone with his horns."
With further reference to the above provisions of Roman Law, we note that under Ædilian Edicts citizens were forbidden to have a dog, a tame or a wild boar, a bear or a lion in any common highway.
[2] It is therefore to be seen that the provisions of Roman Law, the holdings of French Courts, as commented upon by Laurent, and the jurisprudence of the Courts of Louisiana are in accord upon certain general principles to the effect that the owner of an animal is liable for damages caused by the animal upon even a slight showing of negligence on the part *Page 522 
of the owner. We think it is also clear that there is at least an inferential distinction in the degree and basis of liability, dependent upon the type and character of animal which has caused the damage. For this reason, we are led to an appreciation of the very obvious distinction between actions arising from injuries by dogs and the character of action upon which plaintiff's claims in the instant case are based.
Surely, it cannot be reasonably argued that the liability of the owner of a horse, who has placed the temporary control of the animal in another, under a contract of hire or use, is exactly similar to the liability of the owner of a dog which remains under his control and care.
The nature and the use of the animal seems to us to bear directly upon the extent and degree of liability. The two propositions might perhaps be regarded in the same light and as being governed by the same rules if, for example, a horse had kicked or bitten a licensee or invitee of the owner.
In the final analysis we are confronted with the necessity of determining the extent and degree of liability of the owner of a horse which has been rented to another for the purpose of being ridden for pleasure by such person. Under the circumstances and facts of the case before us, the guidance and control of the animal was surrendered by the owner to the rider, who had engaged the service of the horse for this purpose. If the facts showed that the accident occurred as the direct result of any tendency or trait of viciousness, wildness, fractiousness or bad temper, and if the evidence showed the owner to have knowledge, or even that he should have had knowledge of such traits or tendencies, then we would be inclined to consider the case as falling under the general rules laid down and discussed with reference to injuries caused by dogs. But, as we point out, the facts do not sustain such a conclusion.
Departing from Louisiana Jurisprudence both counsel have cited numerous cases from other states. Consideration of these cases indicates that different principles prevail in different jurisdictions, but, by and large, we find nothing in our study which would recommend the adoption of any one or any group of such cases as a guide for the formulation of a binding principle of law.
Distinguished counsel for plaintiff has emphasized the holding of the Court in the case of Vaningan v. Mueller,208 Wis. 527, 243 N.W. 419, which was decided by the Supreme Court of Wisconsin, and has quoted the reported case in its entirety. Recovery by the plaintiff in the cited case was allowed on a theory of breach of contract. Careful consideration of the case clearly indicates that the facts and the proof in support thereof definitely eliminate this case as reliable authority or precedent upon which to base determination of the case before us. A specific request was made for a gentle horse suitable for a beginner who had ridden a horse only two times, both of which were during the year before the particular occasion. The evidence further showed that the horse was not gentle. These facts are entirely at variance with the ones established in the instant case, and, therefore, effectively nullify the applicability of any principles set forth in the Vaningan case.
Reverting to Louisiana Jurisprudence, we call attention to some points which are of value in our consideration of the issue before us.
In Martinez v. Bernhard, 106 La. 368, 30 So. 901, 55 L.R.A. 671, 87 Am.St.Rep. 306, it was held that the owner of a gentle dog which had always been of a kind temper, had never attempted to bite anyone, and had never given occasion to suspect that he would bite, was not liable in damages by the mere fact that the animal had bitten someone. The opinion by Justice Breaux affirmed a judgment for defendant primarily upon the ground that liability does not arise unless there be some fault on the part of the owner, and cited Montgomery v. Koester, 35 La. Ann. 1091, 48 Am.Rep 253; McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895, and Delisle v. Bourriague, 105 La. 84, 29 So. 731, 54 L.R.A. 420.
In the Delisle case, supra, the Court stated that there was no responsibility where *Page 523 
there was no fault, and quoted Laurent, Volume 20, page 675, to the effect that the jurisprudence of France was to the same effect.
In White v. Sens, supra, the Court stated the rule to the effect that the owner of a domestic animal is not in general liable for an injury committed by it unless it be shown that he has knowledge of its vicious propensities, citing Gillespie v. Blaise, 3 La. App. 59. The complement of this general rule was also stated by the Court, that the slightest fault or negligence on the part of the owner of the animal is sufficient to impose liability for its misconduct, citing Delisle v. Bourriague, 105 La. 77, 29 So. 731, 54 L.R.A. 420, but the Court mentioned the qualification that an owner would not be responsible in the event damage were caused by an unforeseen accident or one against which he could take no precaution.
[3] For the purpose of a determination of this case, we feel that the general principles, as established by the jurisprudence of Louisiana, are applicable, although we feel that the facts of the instant case are far stronger in favor of defendant, and that the circumstances are such as might place the case outside of the general provisions which have been held to apply to the liability of owners of animals. We would wish it to be definitely understood that we are not here attempting to formulate the expression of a rule of law which would apply to all cases comprehending the issue of liability of the owner or operator of a stable of riding horses, since, in our opinion, such liability should be distinctly less in degree than that which is applied to the line of cases which involve injuries inflicted by dogs or other animals.
Thorough and painstaking consideration and analysis of the record in this case convinces us that plaintiff has completely failed to present even a minimum of proof of any one of the theories of negligence which she has advanced.
We have gone into some detail in our discussion of the law in this case in deference to the painstaking study, well-considered preparation and elaborate presentation of points of law evidenced in the erudite briefs of distinguished counsel for both plaintiff and defendants. However, we are of the opinion, that, under any construction of the law, the case must be held to be with the defendants on the facts alone.
[4] We think the record affirmatively shows that plaintiff was furnished with a gentle horse, and despite our deep sympathy for plaintiff, we cannot find that there is even the slightest degree of negligence imputable to defendants under the facts developed upon trial.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.